# *IN THE UNITED STATES DISTRICT COURT*
# *FOR THE DISTRICT OF COLUMBIA*

**KEON BLAKE,**

        **Plaintiff,**

                                **Civil Action No: 1:12-cv-01349 JEB**

**v.**

**SECURITAS SECURITY SERVICES, INC.,**

        **Defendant.**

### MOTION TO STRIKE EXPERT TESTIMONY OF WILLIAM S. GARMOE

COMES NOW the Defendant, Securitas Security Services USA, Inc. ("Securitas"), and pursuant to Fed. R. Civ. P. 37(c) moves this Court to strike the Plaintiff's so-called "rebuttal" expert William S. Garmoe, Ph.D., ABPP-CN, and to exclude all testimony and evidence of or related to his opinions in this matter. In support of this motion, Securitas states as follows:

#### I.    LCvR 7.1(m) STATEMENT

On March 29, 2013, counsel for Securitas had a telephone conversation with counsel for the Plaintiff regarding this motion. Also on March 29, 2013, counsel for Securitas provided an advance courtesy copy of the motion to Plaintiff's counsel, requesting that counsel read the proposed motion and the grounds therefore and advise whether he would consent to the relief requested before the motion was filed. On April 1, 2013, counsel discussed the matter on the telephone. In that conversation, counsel for the Plaintiff stated that he could not consent and would oppose the motion. Movant's counsel hereby certifies that discussions were held in good faith by all counsel in an effort to resolve the motion by consent or limit the areas of disagreement and that no agreement could be reached.

## II. INTRODUCTION

In his Complaint, Plaintiff Keon Blake (hereinafter "the Plaintiff" or "Blake") alleges that he "fell from a balcony" on the third floor of McKinley Technology High School after attending a homecoming dance. (Compl. ¶ 15.) He alleges that he was able to access this third floor balcony because Securitas allegedly failed close a "security gate."[1] (Compl. ¶¶ 12-14.) The balcony overlooks an atrium. Two sets of stairs lead from either side of the balcony to the first floor of the atrium. In addition to a traditional railing, a series of cables are affixed between columns over the railing as additional fall protection. Blake admits that he had smoked what he thought was marijuana before the dance. (*See* Excerpts from Dep. of Keon Blake, attached as Exhibit A, at 63, 69-70.) He claims that he has no recollection of being on the balcony that night. (*Id.* at 85-86, 108-109.) Blake admits, after examining images of himself captured from closed circuit surveillance video, that he ducked under the protective cables of the third floor balcony. (*See id.* at 118-119.) He can then be seen in surveillance footage going over the railing and falling to the atrium floor below.

## III. RELEVANT PROCEDURAL BACKGROUND

On January 15, 2013, Plaintiff served his Rule 26(a)(2) Expert Disclosure Statement to Securitas's counsel.[2] The disclosure pleading listed William Garmoe, PhD, along with others, under the heading "Retained Experts." According to the Plaintiff's Rule 26(a)(2) Statement, Dr. Garmoe is a neuropsychologist who "is performing neuropsychology testing on Keon Blake. He will prepare a report discussing how Blake's injuries have affected his overall well-being and mental state." The Plaintiff's Rule 26(a)(2) statement said nothing more about Dr. Garmoe; it did

---

[1] Through discovery, it has been determined beyond dispute that the key-operated gates in question are not "security gates," were not supposed to be lowered at night, had never been lowered at night prior to this incident, that the school's security guards were not supposed to lower the gates at night, and that the guards did not have or have access to the keys necessary to lower the gates.

[2] Although the Pretrial Scheduling Order required that Plaintiff's experts be disclosed on January 11, 2013, by agreement of the parties, this deadline was extended to January 15, 2013.

not include a copy of any report prepared and signed by Dr. Garmoe revealing his opinions, the basis for any opinions, or the facts and data on which he relies, as required by the Rule.

On or about February 13, 2013, Securitas filed a Motion to Strike Dr. Garmoe on the grounds that pursuant to Fed. R. Civ. P. 37(c), he should not be allowed to supply expert testimony at the trial of this matter because Plaintiff's disclosure of Dr. Garmoe failed to meet the requirements of Fed. R. Civ. P. 26(a)(2). Securitas requested that this Court enter an order *in limine* striking the disclosure of Dr. Garmoe as an expert, excluding him as a witness at trial, and excluding all testimony and evidence of or related to his opinions in this matter.

Prior to filing the motion to strike Dr. Garmoe, on or about February 12, 2013, pursuant to LCvR 7(m), counsel for Securitas in good faith conferred with counsel for the Plaintiff and requested that Dr. Garmoe be withdrawn as an expert witness and that his testimony and opinions be excluded at trial. At that time, Plaintiff's counsel would not agree. Then, on February 26, 2013, Plaintiff filed a response to Securitas's Motion to Strike the expert testimony of Dr. Garmoe. At this point, Plaintiff's counsel changed his mind, and his response was simply that "the Plaintiff will agree not to call William S. Garmoe as an expert witness at trial." On March 5, 2013, the Court entered a Minute Order granting Securitas's motion to strike the expert testimony of Dr. William S. Garmoe.

On March 7, 2013, Securitas disclosed its only two testifying experts: Michael Dorn, an expert on school safety and security, and Howard Levinson, a security expert.[3] Their reports are attached hereto as Exhibit B. Neither of these experts has any background, experience or training in the fields of psychology or neuropsychology.

---

[3] Although the Pretrial Scheduling Order required that Securitas's experts be disclosed on February 28, 2013, by agreement of the parties, this deadline was extended to March 7, 2013.

3

On March 25, 2013, the Plaintiff served his rebuttal expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2).[4] The rebuttal disclosure is attached hereto as Exhibit C. The Plaintiff again disclosed Dr. Garmoe, this time to "rebut Defendant's experts who opine that the injuries to Plaintiff Keon Blake were self-inflicted, intentional injuries." (Ex. C at p. 1.) Dr. Garmoe's report states that he was asked his "opinion regarding whether Keon Blake intentionally went over the balcony at his school to cause injury to himself." (*Id.* at p. 4.) Dr. Garmoe opines that "Keon Blake did not intentionally or planfully jump from the balcony as a means of committing suicide or otherwise injuring himself." (*Id.*)

Because Dr. Garmoe's opinions are not proper rebuttal testimony, and because his proffered testimony fails to meet the requirements of Federal Rule of Evidence 702, Securitas again respectfully requests that this Court strike Dr. Garmoe as an expert, excluding him as a witness at trial, and excluding all testimony and evidence of or related to his opinions in this matter.

## IV.   ARGUMENT

### A.   <u>Dr. Garmoe's opinions are outside the scope of allowable rebuttal testimony.</u>

Rebuttal evidence is "intended solely to <u>contradict or rebut evidence</u> on the same subject matter identified by another party" in its expert disclosures. Fed. R. Civ. P. 26(a)(2)(D) (emphasis added). "A rebuttal expert report is not the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice." *Ebbert v. Nassau County*, 2008 WL 4443238 at *13 (E.D.N.Y. Sept. 26, 2008) (citing *STS Software Systems, LTD v. Witness Sys., Inc.*, 2008 WL 660325, at *2 (N.D. Ga. Mar. 6, 2008); *see also Jorgenson Forge Corp. v. Consarc Corp.*, 2002 WL 3363668, at *1 (W.D. Wash. Jan. 9, 2002).

---

[4] Although the Pretrial Scheduling Order required that rebuttal expert disclosures be served by March 15, 2013, by agreement of the parties, this deadline was extended to March 25, 2013.

Neither of Securitas's experts opined that the Plaintiff's actions in going over the balcony were "intentional," nor do they opine that he was attempting to injure himself or commit suicide on the night of the incident. Rather, Mr. Dorn states that "the incident would likely have been prevented had Mr. Blake chosen not to smoke what he believed to be marijuana." (Ex. B, Report of M. Dorn, at p. 2). Dr. Garmoe does not rebut this opinion – in fact, Dr. Garmoe agrees that the incident was "likely the result of a state of acute disorientation and panic due to the influence of marijuana. . . ." (Ex. C at p. 4). Mr. Dorn also states that the incident "would have been prevented had Mr. Blake not climbed over the railing and under the protective cables and then jumped or fallen from the atrium landing." (Ex. B, Report of M. Dorn, at p. 2). Dr. Garmoe does not contradict or rebut this statement. Notably, Mr. Dorn <u>does not</u> offer an opinion as to whether Blake's actions in doing so were "intentional," nor does he express an opinion as to Blake's motives.

Similarly, as an expert in security, Mr. Levinson offers no opinion with regard to Blake's state of mind or his actions on the night of the incident other than to note that Blake was in an impaired state because he admitted to administrators that he "smoked weed." (Ex. B, Report of H. Levinson, at p. 5.) Mr. Levinson offers no opinion as to whether Blake's actions in going over the atrium balcony railing were intentional, nor does he opine that Blake planned or intended to commit suicide or injure himself.[5]

Dr. Garmoe's report does not rebut or contradict any of the opinions presented by Mr. Dorn and Mr. Levinson in their respective reports. Rather, Dr. Garmoe's disclosure is merely an attempt by the Plaintiff to offer previously undisclosed opinions "under the guise of rebuttal." *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008). Therefore, the

---

[5] Mr. Levinson describes Blake's injuries as "self-inflicted" i.e., not inflicted by another person, but he does not opine that his injuries were *intentionally* self-inflicted.

Plaintiff's disclosure of this opinion as a "rebuttal" is not only improper, but is also a thinly veiled attempt to circumvent his failure to timely disclose Dr. Garmoe as a testifying expert, as well as this Court's order striking Dr. Garmoe.

**B.     Dr. Garmoe's opinions do not meet the requirements of Federal Rule of Evidence 702 for expert witness testimony.**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 requires that the expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Rule imposes "a special obligation upon a trial judge to ensure that scientific testimony is not only relevant, i.e., that it "fits" the issue in dispute, but also that it is reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). As the Supreme court reiterated in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157 (*citing General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997)). Thus, trial judges are charged with "the responsibility of acting as 'gatekeepers' to shield unreliable or irrelevant expert testimony and evidence from the jury." *F.T.C. v. Whole Foods Market, Inc.*, 2007 WL 7632283 at *1 (D.D.C. 2007) (citing *Daubert,* 509 U.S. 579 (1993)).

### i. *Dr. Garmoe's testimony fails the* **Daubert** *reliability test.*

Expert testimony is reliable if (1) it "is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the witness has applied the principles and methods reliably to the facts of the case." *Estate of Gaither ex rel. Gaither v. D.C.,* 2008 WL 5869878, at *2 (D.D.C. July 30, 2008) (citing Fed. R. Evid. 702). When determining whether an expert's testimony is reliable, the court should focus on the "principles

6

and methodology used by the expert, not the conclusions reached." *Estate of Gaither,* 2008 WL 5869878, at *2 (citing *Daubert,* 590 U.S. at 595).

Dr. Garmoe's report states that he evaluated Blake on two separate occasions, and that he conducted "a battery of neuropsychological tests." (Ex. B at p. 4.) The results of these tests, conducted over two years after the night of the incident in question, are not disclosed in the report. Dr. Garmoe also reviewed the camera footage of Blake on the night of the incident, Blake's deposition testimony, and the deposition testimony of Blake's friend, Kevohn McCormick. (*Id.*) He had one telephone call with Blake's mother, who was not at the school on the night of the incident. (*Id.*) Based only upon the information gathered from these sources, Dr. Garmoe offers an opinion "to a reasonable degree of *medical* certainty" about Blake's intentions and motives on the night of October 15, 2010. (*Id.*) He also opines that Blake's fall was the result of "a state of acute disorientation and panic due to the influence of marijuana, anxiety and fear regarding the immediate situation, and sensory limitations caused by not having his glasses." (*Id.*)

Dr. Garmoe's report provides no information on any reliable principles or methods from which his conclusions are drawn. The report contains no description of the "battery of neuropsychological tests" Dr. Garmoe performed on Blake, nor does it describe the results of those tests. Moreover, Dr. Garmoe provides no rationale for how the results of those tests are in any way connected to Blake's actions over two years ago on the night of October 15, 2010. Dr. Garmoe's report also fails to demonstrate sufficient facts or data upon which his conclusions are based. For example, while it is uncontested that Blake smoked what he believed to be marijuana on the night of the incident, Dr. Garmoe is not a toxicologist and cannot opine as to Blake's specific level of impairment. Additionally, Dr. Garmoe is not an ophthalmologist, and his report

7

provides no data supporting Blake's level of visual impairment or "sensory limitations caused by not having his glasses." (*Id.*).

In short, Dr. Garmoe's report appears to offer nothing more than "subjective belief and unsupported speculation" about Blake's intentions, state of mind and motives on the night of the incident. *Daubert*, 509 U.S. at 590.

### ii. *Dr. Garmoe's testimony fails the* Daubert *relevancy test.*

Not only is Dr. Garmoe's proffered opinion testimony not based upon a reliable foundation, it also will not assist the fact-finder in determining any factual dispute at issue in this lawsuit. Dr. Garmoe's report offers no "scientific, technical or other specialized knowledge" to assist the trier of fact, as required by Rule 702 in order to ensure that expert witnesses "do not testify about matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.,* 882 F.2d 705, 708 (2d Cir. 1989).

In his Rebuttal Rule 26(a)(2) statement, the Plaintiff notes that the defendant "has the burden of proof for the affirmative defense of intentional injury and contributory negligence." At this time, Securitas has not raised "intentional injury" as an affirmative defense, either in its responsive pleadings or through its expert disclosures. Moreover, a determination regarding an individual's intent is a "quintessential jury question." *SEC v. Johnson,* 525 F.Supp.2d 70, 78 (D.D.C. 2007); *see also In re Rezulin Prods. Liab. Litig.,* 309 F.Supp.2d 531, 545-46 (S.D.N.Y. 2004) (holding that "inferences about the intent or motives of parties or others lie outside the bounds of expert testimony"); *In re Diet Drugs,* 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000) (holding that "the question of intent is a classic jury question and not one for the experts); *Marvel Worldwide, Inc. v. Kirby,* 777 F. Supp. 2d 720, 729-30 (S.D.N.Y. 2011) (excluding expert testimony on the intent of a corporate party and its employees).

Additionally, the Plaintiff was put on notice that Securitas asserts the affirmative defense of contributory negligence when Securitas filed its Answer back in August of 2012. The Plaintiff had every opportunity to disclose an expert on the issue of contributory negligence with his Rule 26(a)(2) disclosure statement on January 15, 2013, and yet failed to do so. Now, the Plaintiff improperly attempts to circumvent this failure by disclosing such expert opinion testimony by way of a rebuttal. (See Part IV.A, *infra*.)

What is more, the proffered opinion testimony will not assist the trier of fact in determining whether the plaintiff was contributory negligent. "Contributory negligence is unreasonable conduct." *Scoggins v. Jude,* 419 A.2d 999, 1004 (D.C. 1980). A plaintiff is contributory negligent if his conduct "'falls below the standard to which a plaintiff should conform for his own protection and contributes to the plaintiff's injury.'" *Id.* (citing Restatement (Second) of Torts § 463). The issue of contributory negligence presents a question of whether the plaintiff's conduct, "voluntary or not, was unreasonable." *Id.* at 1005; *see also Phillips v. Fujitec Am., Inc.,* 3 A.3d 324, 328 (D.C. 2010) (explaining the different analyses for assumption of the risk and contributory negligence, and holding that contributory negligence applies even where a plaintiff voluntarily exposes himself to an unreasonable risk, because "the focus in such cases is on the <u>reasonableness of the plaintiff's conduct rather than the voluntariness of it</u>." (emphasis added)). As such, Dr. Garmoe's opinion that "Keon Blake did not intentionally or planfully jump from the balcony as a means of committing suicide or otherwise injuring himself" has no bearing or relevance on the issue of contributory negligence in this case. Dr. Garmoe gives no opinion as to whether Mr. Blake's conduct fell below the standard of care to which a reasonable person should conform for the protection of his own safety.

9

## I. CONCLUSION

The expert testimony proffered by Dr. Garmoe's report exceeds the scope of allowable rebuttal testimony under Fed. R. Civ. P. 26(a)(D), because it presents new arguments not raised by either of Securitas's testifying experts. To allow Dr. Garmoe to testify as to the intent and motives of the Plaintiff on the night of the incident would be to severely prejudice Securitas, as it has not retained an expert to opine on these matters. Moreover, Dr. Garmoe's opinions are inadmissible expert testimony under Federal Rule of Evidence 702, because they are neither reliable nor relevant to the issues in this litigation.

WHEREFORE, for the foregoing reasons, Defendant Securitas Security Services USA, Inc. respectfully requests that this Court enter an order *in limine* striking the rebuttal disclosure of Plaintiff's Expert William S. Garmoe, Ph.D., ABPP-CN as an expert, and excluding him as a witness at trial for any reason, and excluding all testimony and evidence of or related to his opinions in this matter.

Respectfully submitted,

**SECURITAS SECURITY SERVICES USA, INC.**

By: /s/ James W. Walker
Counsel

James W. Walker, Esquire (DC Bar No.: 495552)
Maggie D. Finnegan, Esquire (admitted *pro hac vice*)
VANDEVENTER BLACK LLP
707 E. Main Street, Suite 1700
PO Box 1558
Richmond, Virginia 23218-1558
 (804) 237-8800 (phone)
(804) 237-8801 (fax)
*Counsel for Securitas Security Services USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Strike Rebuttal Expert Testimony was delivered electronically via the CM/ECF filing system to the following parties of record on April 1, 2013:

William P. Lightfoot, Esq.<br>
Paulette E. Chapman, Esq.<br>
Kelly J. Fisher, Esq.<br>
KOONZ, MCKENNEY, JOHNSON, DEPAOLIS & LIGHTFOOT<br>
2001 Pennsylvania Avenue, N.W., Suite 450<br>
Washington, D.C. 20006<br>
(202) 659-5500<br>
*Counsel for Plaintiff*

                                                 /s/ James W. Walker
                                       James W. Walker, Esquire (DC Bar No.: 495552)
Maggie D. Finnegan, Esq. (admitted *pro hac vice*)
VANDEVENTER BLACK LLP
707 E. Main Street, Suite 1700
PO Box 1558
Richmond, Virginia 23218-1558
(804) 237-8800 (phone)
(804) 237-8801 (fax)
*Counsel for Securitas Security Services USA, Inc.*