UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**KEON BLAKE,**

   **Plaintiff,**

      **v.**                                     Civil Action No. 12-1349 (JEB)

**SECURITAS SECURITY SERVICES,
INC.,**

   **Defendant.**

MEMORANDUM OPINION

On October 15, 2010, Plaintiff Keon Blake attended a dance at McKinley Technology

High School in Washington, where he was a student.  Defendant Securitas Security Services,

Inc., a private contractor, was engaged to provide security for the dance.  Some time that

evening, after smoking what he believed to be marijuana, Blake jumped or fell from a third-floor

balcony at the school, suffering serious injuries.  He brings this action against Securitas, alleging

that but for Defendant's negligent failure to appropriately seal off relevant areas of the school, he

would not have been able to access the balcony.

During the course of discovery, both parties have named expert witnesses on different

issues.  Plaintiff has announced his intention to call Dr. William S. Garmoe, Ph.D., ABPP-CN, a

neuropsychologist, as a rebuttal expert, and Defendant now moves to strike his testimony on

grounds that Garmoe's report is not appropriate rebuttal or, in the alternative, that it fails to

satisfy the reliability requirements of Fed. R. Evid. 702 and the Supreme Court's decision in

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).  Agreeing that Garmoe's report is

outside the scope of the opinions proffered by Defendant's experts, the Court will grant the

Motion and strike his testimony.

## I.    Background

This is not the first time Garmoe's name has appeared in this case.  Pursuant to the

Court's Scheduling Order (ECF No. 8), Plaintiff served his initial Rule 26(a)(2) expert disclosure

on January 15, 2013, listing Garmoe as a "Retained Expert" who was "performing

neuropsychology testing on Keon Blake" and would "prepare a report discussing how Blake's

injuries have affected his overall well-being and mental state."  See Opp., Exh. 5 (Plaintiff's

Rule 26(a)(2) Disclosure Statement) at 2.  The disclosure statement did not include a report

prepared by Garmoe outlining his opinions, their bases, or the facts and data upon which he

relied.  Id.

As a result, Securitas subsequently moved to strike Garmoe as an expert since Plaintiff's

disclosure statement did not comply with the requirements of Fed. R. Civ. P. 26(a)(2).  See Mot.

in Limine to Strike Expert Testimony of William S. Garmoe (ECF No. 11).  Instead of opposing

such Motion, Plaintiff agreed not to call Garmoe as an expert witness.  See Response to Mot. in

Limine to Strike Expert Testimony of William S. Garmoe (ECF No. 13).  Noting Plaintiff's

concession, this Court granted Defendant's Motion in Limine by Minute Order on March 5,

2013.

On March 7, 2013, Defendant served its Rule 26(a)(2) statement, see Mot., Exh. B

(Defendant's Rule 26(a)(2) Disclosure of Expert Testimony), listing two testifying experts:

Michael Dorn, an expert on school safety and security, and Howard Levinson, an expert on

security.  Id.  Several weeks later, Plaintiff served a rebuttal disclosure statement, again listing

Garmoe as a testifying expert, this time including a report and other supporting documentation.

See Mot., Exh. C (Plaintiff's Rebuttal Rule 26(a)(2) Statement).  Once again, Securitas has filed

a Motion to Strike.

## II.    Legal Standard

A district court has "'broad discretion in determining whether to admit or exclude expert testimony.'"  <u>U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.</u>, 608 F.3d 871, 895 (D.C. Cir. 2010) (quoting <u>United States v. Gatling</u>, 96 F.3d 1511, 1523 (D.C. Cir. 1996)).  Federal Rule of Evidence 702, which governs the admissibility of such testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

<u>Id.</u>  Under Rule 702, trial courts are required to act as gatekeepers who may only admit expert testimony if it is both relevant and reliable.  <u>See</u> <u>Daubert</u>, 509 U.S. at 589 (citing Fed. R. Evid. 702); <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 141 (1999) (applying <u>Daubert</u>'s holding to non-scientific expert testimony); <u>see also</u> <u>Calvetti v. Antcliff</u>, 346 F. Supp. 2d 92, 110-11 (D.D.C. 2004) (describing District Court's "gatekeeping function").

Expert testimony is relevant if it will assist the trier of fact to understand the evidence presented in the case.  <u>See</u> <u>Daubert</u>, 509 U.S. at 591-93 (citing Fed. R. Evid. 702); <u>Kumho Tire</u>, 526 U.S. at 147-48.  While the way in which "reliability is evaluated may vary from case to case," <u>United States v. Frazier</u>, 387 F.3d 1244, 1262 (11th Cir. 2004) (<i>en banc</i>), in all cases, "[t]he trial judge . . . must find that [the proffered testimony] is properly grounded, well-

reasoned, and not speculative before it can be admitted."  Fed. R. Evid. 702 Advisory

Committee's note (2000 amends.).

Fed. R. Civ. P. 26(a)(2) provides that a "party must disclose to the other parties the

identity of any witness it may use at trial to present expert testimony governed by Rule 702."  Id.

Disclosures must ordinarily be supplemented by a written report, prepared and signed by the

witness, including the substance of the opinions the expert plans to offer and the facts and data

he relies upon.  Id.  For proposed experts who regularly provide expert testimony or have been

specifically retained to do so, the report must also detail the witness' qualifications, his past

history as an expert, and his compensation.  Id.  After the parties' initial disclosures of proposed

expert testimony, opposing parties have thirty days to disclose any expert witness who will offer

evidence "intended solely to contradict or rebut evidence on the same subject matter identified

by another party."  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Under Rule 37(c)(1), if a party fails to

comply with these disclosure requirements, "the party is not allowed to use that . . . witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of this sanction,"

courts may provide alternative sanctions, including informing the jury of the party's failure,

awarding costs and attorney fees to the prejudiced party, or any of the other sanctions listed in

Rule 37(b)(2)(A)(i)-(vi).  Id.

## III.   Analysis

In moving to strike Garmoe's testimony, Securitas argues that it is neither proper rebuttal

nor sufficiently reliable.  The Court need only address the first point.  Under Rule

26(a)(2)(D)(ii), rebuttal expert testimony is permitted after the parties' initial disclosures only

where it "is intended solely to contradict or rebut evidence on the same subject matter identified

by another party."  Such testimony "cannot be used to advance new arguments or new evidence."

Larson v. Wisc. Cent. Ltd., No. 10-446, 2012 WL 368379, at *4 (E.D. Wisc. Feb. 3, 2012); see

also Baldwin Graphic Sys., Inc. v. Siebart, Inc., No. 03-7713, 2005 WL 1300763, at *2 (N.D. Ill.

Feb. 22, 2005) ("The rebuttal report is no place for presenting new arguments.").  Rather,

rebuttal testimony must "explain, repel, counteract, or disprove evidence of the adverse party."

United States v. Lamoreaux, 422 F.3d 750, 755 (8th Cir. 2005) (internal quotation omitted); see

also Peals v. Terre Haute Police Dep't, 535 F.3d 621, 630 (7th Cir. 2008) ("The proper function

of rebuttal evidence is to contradict, impeach, or defuse the impact of evidence offered by an

adverse party.") (internal quotation omitted); Faigin v. Kelly, 184 F.3d 67, 85 (1st Cir. 1999)

("The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts

brought out in the other side's case.").  Where a party attempts to designate as a "rebuttal" expert

someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may

be viewed as an initial expert who was not timely designated and whose testimony may be struck

by the Court for violating Rule 26(a) and the Court's governing scheduling order.  See, e.g.,

Donnell v. Fidelity Nat'l Title Agency of Nev., No. 07-00001, 2012 WL 170990, at *4 (D. Nev.

Jan. 20, 2012) ("[I]t is clear that Brooks was always intended to testify as an initial expert

witness for the Plaintiff.  Plaintiff failed to designate him as an initial expert and is now

improperly attempting to use him as a rebuttal expert to obtain an extension of the deadline for

designating an initial expert.").

    According to Plaintiff, "Dr. Garmoe's opinions rebut two opinions identified by the

defense security experts.  First, by testifying that Keon Blake was not suicidal, Dr. Garmoe

rebuts the opinion that Keon's injuries were 'self-inflicted.'  Second, Dr. Garmoe rebuts the

opinion that marijuana alone caused the incident."  See Opp. at 1.  Defendant responds that these

purported opinions are not, in fact, those reached by its experts or identified in their reports, and it suggests that "Dr. Garmoe's disclosure is merely an attempt by the Plaintiff to offer previously undisclosed opinions under the guise of rebuttal." See Mot. at 5 (citation and quotation marks omitted). The Court concurs.

To begin with, Defendant's experts Dorn and Levinson are security experts – not psychologists – and they offer no opinion on Blake's mental state. While both Dorn and Levinson opine that Plaintiff's injuries were self-inflicted, see Def.'s 26(a)(2) at 5, 11, 16, this simply means that they were caused by his jumping or falling from the balcony. See id. Neither expert states that Blake was suicidal or otherwise intended to harm himself on the evening in question. Id. In fact, Securitas has specifically stated that it "has not raised 'intentional injury' as an affirmative defense." See Mot. at 8. Defendant's experts merely take a position regarding who may or may not have been responsible for securing the relevant areas of the school and whether those individuals met the appropriate standard of care in providing security at the event. See Def.'s 26(a)(2) at 11-12, 19-20. This has nothing to do with Blake's state of mind. As a result, Garmoe's opinion that "to a reasonable degree of medical certainty . . . Keon Blake did not intentionally or planfully jump from the balcony as a means of committing suicide or otherwise injuring himself" cannot be considered an appropriate rebuttal opinion. See Plaintiff's Rebuttal 26(a)(2) at 4. As Garmoe is responding to an argument that appears nowhere in the opinions of Defendant's experts, his testimony on this issue must be struck.

Plaintiff's second contention – namely, that Garmoe's opinion rebuts the defense experts' opinion that marijuana alone caused the incident, see Opp. at 3 – mischaracterizes the opinions of both Defendant's experts and Garmoe himself. Dorn opines that "Mr. Blake's decision to smoke what he believed was marijuana set in motion a series of events that led

directly to his jump/fall from the atrium landing."  See Def.'s 26(a)(2) at 11.  Likewise, Levinson

observes that Plaintiff admitted to school security and police officers that he had "smoked

weed."  Id. at 17.  Neither expert, however, states that Plaintiff's alleged marijuana use alone

caused his injuries, merely that it may have contributed to them.  Far from rebutting this

conclusion, Garmoe's own opinion seems to support it, as he states that "Keon Blake's fall was

most likely the result of a state of acute disorientation and panic due to the influence of

marijuana, anxiety and fear regarding the immediate situation, and sensory limitations caused by

not having his glasses."  See Pl.'s Rebuttal 26(a)(2) at 4.  Because this opinion does not rebut

any arguments presented by Defendant's experts, but rather agrees with their conclusions, it will

be struck.

  In sum, the Court agrees with Defendant's characterization that Plaintiff's rebuttal report

is "a thinly veiled attempt to circumvent his failure to timely disclose Dr. Garmoe as a testifying

expert, as well as this Court's order striking Dr. Garmoe."  See Mot. at 6.  Because Garmoe's

report cannot be considered a rebuttal report, Plaintiff's belated disclosure is not permitted under

Fed. R. Civ. P. 26(a)(2)(D)(ii).  Instead, Garmoe's report must be considered an untimely and

improperly disclosed initial expert report in violation of Rule 26(a)(2), subjecting Plaintiff to

sanctions under Rule 37(c)(1).  See Norden v. Samper, 544 F. Supp. 2d 43, 49 (D.D.C. 2008).

"[T]he overwhelming weight of authority is that preclusion is required and mandatory absent

some unusual or extenuating circumstances – that is, a substantial justification."  Elion v.

Jackson, No. 05-992, 2006 WL 2583694, at *1 (D.D.C. Sep. 8, 2006) (emphasis in original;

quotation marks omitted).  Here, Plaintiff has never argued that Garmoe's report could be viewed

as an excusably late initial expert report, and, consequently, he has not shown that his failure to

timely and properly disclose the testimony "was substantially justified or . . . harmless."  See

Fed. R. Civ. P. 37(c)(1).  The Court, then, must grant Defendant's Motion and strike Garmoe's testimony.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion.  A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   May 1, 2013