UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEON BLAKE,<br><br>  Plaintiff,<br><br>    v.<br><br>SECURITAS SECURITY SERVICES, INC.,<br><br>  Defendant. | Civil Action No. 12-1349 (JEB) |

## MEMORANDUM OPINION

  This case arises out of an unusual and unfortunate accident. On October 15, 2010, Plaintiff Keon Blake attended a dance at McKinley Technology High School in Washington, where he was a student. Defendant Securitas Security Services, Inc., a private contractor, was engaged to provide security for the event. Some time that evening, after smoking marijuana, Blake jumped or fell from a third-floor balcony at the school, suffering serious injuries. He brings this action against Securitas, alleging that but for Defendant's negligent acts, he would not have been able to access the balcony. Discovery having concluded, Securitas now moves for summary judgment, arguing both that Plaintiff cannot establish proximate cause and that he was contributorily negligent as a matter of law. As the Court agrees with the latter contention, it will grant the Motion.

**I. Background**

  Viewed in the light most favorable to Plaintiff, the facts show that in 2010, he was a student at McKinley Tech. See Mot., Statement of Undisputed Material Facts (Def.'s SUMF) at 1. On the evening of October 15, the school held a homecoming dance in its gym, which Blake

1

attended. See id. Before the dance, Blake and several of his friends went to an abandoned lot across the street from the school to smoke marijuana. See id. at 1-2. He later admitted that he knew from past experience that smoking marijuana impaired his thinking, and that on this particular occasion, it made him feel "weird." See id. at 1. Afterwards, Blake and his friends returned to the school to attend the dance. See id.

Assistant Principals Guillaume Gendre and Michael Moss, who were supervising the event, observed at some point that Blake was at the center of a commotion among the students in the gym. See id. Moss noted that Blake, who was leaning on his friends for support, "'looked to be under the influence of something.'" See id. (quoting Mot., Exh. A (Deposition of Michael Moss) at 41:1-41:13). At this point, Moss remained in the gym while Gendre escorted Blake into a breezeway separating the gym from the main part of the school building and questioned him about his behavior. See id. Shortly thereafter, they were joined by Kevohn McCormick, another student and a friend of Blake's, but the boys then left the breezeway and entered the main school building, despite Gendre's objections. See id. Gendre followed them into the main building and asked Dean of Students Gregory Bacon, who was in his office, to assist him. See id. Gendre and Bacon then followed Blake and McCormick up a flight of stairs to the third floor of the building, where McCormick's locker was located. See id. at 3.

At some point during their interaction, Blake admitted to Bacon that he had smoked "'some weed,'" see id. (quoting Mot., Exh. E (Deposition of Gregory Bacon) at 37:7-37:16), and then inexplicably urinated into McCormick's open locker. See id. at 4. Blake later recalled experiencing "tunnel vision" at the time. See id. Gendre subsequently left the third floor of the school to seek additional assistance, telling Bacon to "'stay put with the children, do not let them go anywhere, stay with them.'" See id. (quoting Mot., Exh. C (Deposition of Guillaume Gendre)

2

at 44:13-44:19). Shortly after Gendre left, Blake, again without apparent motivation, took off running down the third-floor hallway in the direction of the atrium. See id. Bacon did not attempt to stop Blake, nor did he or McCormick follow him. See id. at 5. Eventually, Blake reached the third-floor balcony overlooking the atrium, ducked under a set of protective cables, climbed over the balcony's guard railing, and fell or jumped to the atrium floor some four stories below. See id. Blake survived the fall but suffered significant injuries. See Compl., ¶ 16.

On the night of the accident, Defendant Securitas was providing security services at McKinley Tech under a contract with the District of Columbia, administered by the Metropolitan Police Department. See Def.'s SUMF at 5-6. The contract required Securitas to post six security guards at the school during regular hours and to provide additional security personnel for after-school events upon request. See id. at 6. That night, Securitas had three guards on duty at the school: two in the gym and one at the main entrance. See id. According to his deposition testimony, Gendre left Bacon alone with Blake on the third floor because he had received no response in his attempt to radio the security guard posted at the main entrance and had gone downstairs to find him. See Gendre Dep. at 44-45, 88-90. When Gendre arrived at the main entrance, he found the guard, Officer DuWarren Purvis, asleep. See id. at 44-47. Gendre then woke Purvis, who called 911, before returning to the group on the third floor. See id. at 47. By the time he returned, however, Blake had already fallen from the balcony. See Def.'s SUMF at 5.

Blake brought this suit in the Superior Court for the District of Columbia on July 24, 2012, asserting that his injuries were caused by several instances of Securitas's negligence on the night of the accident, including Officer Purvis's falling asleep and failing to respond to Gendre's

original distress call. Securitas removed the case to federal court on August 15, 2012. The Court now considers Securitas's Motion for Summary Judgment, filed at the conclusion of discovery.

**II.     Legal Standard**

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, Inc., 477 U.S. at 248). "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). "Until the movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence." Gray v. Greyhound Lines, East, 545 F.2d 169, 174 (D.C. Cir. 1976).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Wash. Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir.

1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50.

**III.    Analysis**

Blake asserts two possible theories of negligence in this case. He argues first that Securitas was negligent for "retaining Officer Purvis despite his history of poor job performance," and second that Purvis – and thus Securitas – was negligent for "failing to respond to [Gendre's] emergency call" on the night of the accident. See Opp. at 5. Under Blake's first theory, if Securitas had appropriately documented Purvis's apparent habit of sleeping on the job, it would have warned or terminated him, and he would not have been employed on October 15. See id. at 8. In Blake's view, "if [Purvis] was terminated, a competent guard would have been working the night of the dance and would have responded to Gendre's call for assistance." Id. According to this theory, if a competent guard had responded, Gendre would not have left Blake's side and Gendre – or someone – could have prevented him from reaching the balcony from which he ultimately fell. See id. at 9-11. Here, Blake's first theory of negligence merges

into the second: if Purvis himself had not been negligent in failing to respond to Gendre's emergency call, Gendre could have prevented Blake's ultimate injuries. See id.

Defendant contends that Blake cannot prevail on either theory. Instead, it argues that it is entitled to summary judgment for two reasons: first, Plaintiff cannot demonstrate that his injuries were proximately caused by Securitas's negligence, see Mot. at 17, and second, Plaintiff was contributorily negligent as a matter of law. See id. at 11. While Securitas presents strong arguments on the causation issue, the Court need not address them, as Plaintiff's own contributory negligence bars his recovery.

A. Contributory Negligence

Under the substantive tort law of the District of Columbia, applicable in this diversity case, see Smith v. Wash. Sheraton Corp., 135 F.3d 779, 782 (D.C. Cir. 1998) (citing Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 553 (D.C. Cir. 1993)), the doctrine of contributory negligence completely bars a plaintiff's recovery where his failure to use ordinary care proximately caused his injuries. See Andrews v. Wilkins, 934 F.2d 1267, 1272 (D.C. Cir. 1991) (applying D.C. law). Because contributory negligence is an affirmative defense, the defendant must "establish, by a preponderance of the evidence, that the plaintiff failed to exercise reasonable care." Poyner v. Loftus, 694 A.2d 69, 71 (D.C. 1997) (citing Singer v. Doyle, 236 A.2d 436, 438 (D.C. 1967)). "Ordinarily, questions of negligence and contributory negligence must be decided by the trier of fact." Poyner, 694 A.2d at 71. In certain cases, however, "where the facts are undisputed and, conceding every legitimate inference, only one conclusion may be drawn, . . . the trial court may rule as a matter of law on negligence [or] contributory negligence." Wash. Metro Area Transit Auth. v. Jones, 443 A.2d 45, 50 (D.C. 1982); see also Tilghman v. Johnson, 513 A.2d 1350, 1351 (D.C. 1986) (describing contributory negligence as a

matter of law as "the exceptional case"); Poyner, 694 A.2d at 71 (contributory negligence may be found only "where the evidence, taken in the light most favorable to the plaintiff, establishes [it] so clearly that no other inference can reasonably be drawn"). Defendant correctly observes that this is just such an exceptional case.

In fact, Defendant argues here that Plaintiff's conduct approaches an even higher standard – contributory negligence *per se*. Under District law, "[t]here is a rebuttable presumption of negligence where a party violates a statute and the violation is a proximate cause of an injury that the statute was designed to prevent." Marshall v. D.C. Caribbean Carnival, Inc., No. 02-1298, 2004 WL 3257066, at *8 (D.D.C. Oct. 26, 2004) (citing Robinson v. District of Columbia, 580 A.2d 1255, 1256 (D.C. 1990)). Under Defendant's theory, Blake's "injuries were proximately caused by his violation of statutory code provisions designed to prevent [them], namely D.C. Code § 25-1001(c) and (d)," see Mot. at 14, which make it a misdemeanor for an individual, "whether in or on public or private property . . . [, to] be intoxicated and endanger the safety of himself, herself, or any other person or property." See D.C. Code §§ 25-1001(c), (d). Given the undisputed evidence that Blake smoked marijuana on the evening of the accident, after which he felt "weird," did things he "normally wouldn't do," and experienced tunnel vision, and then proceeded to break away from a school administrator, run down a hallway, and climb under protective cables and over a railing onto the exposed balcony from which he ultimately fell, Defendant contends, Blake violated the statute because he (a) was clearly intoxicated and (b) clearly endangered himself. See Mot. at 14-15 (citing Mot., Exh. B (Deposition of Keon Blake) at 70:8-70:14, 105:2-105:7, 105:14-106:4).

Even if his actions did not rise to the level of *per se* negligence, Defendant argues that any of several of the steps Blake took on that fateful evening rendered him contributorily

7

negligent as a matter of law. First, Defendant asserts that "the very act of knowingly and
voluntarily smoking marijuana, and thus putting himself under the influence of an intoxicant,
was in itself negligent." <u>See</u> Mot. at 15. Second, if Blake's intoxication alone was insufficient,
Defendant contends that "[n]o reasonable jury could conclude that Blake's conduct was
reasonable when, while under the influence of an intoxicant, he ran away from school
administrators and ultimately placed himself in imminent danger by climbing over the third floor
atrium balcony." <u>Id.</u> at 16. More specifically, in climbing onto the balcony, Blake "evad[ed]
two installations – a series of safety cables and a railing – whose sole purpose is to keep people
from falling," behavior Securitas suggests can only be characterized as negligent. <u>See</u> Rep. at
17. As the Court believes that Blake was clearly contributorily negligent, it need not decide
whether those actions also constituted *per se* negligence.

    1. *Use of Marijuana*

Although Blake does not contest the evidence of his marijuana use, he takes issue with
the idea that it contributed to his injuries, complaining that "Defendant Securitas has not
identified a toxicology expert who could link Keon's behavior to his use of marijuana several
hours prior to the incident," and that "[t]he evidence does not show Keon's level of impairment,
and it does not show that Keon's behavior was typical of marijuana intoxication." <u>See</u> Opp. at
15. While Blake is correct that Defendant has not proffered a toxicology expert here, his
contention that the record is devoid of evidence of his level of impairment and evidence
indicating that his actions were characteristic of marijuana intoxication far overstates his case.
On the contrary, the record is rife with uncontroverted evidence that after admittedly using
marijuana, Blake was significantly impaired, and in a manner not dissimilar from a person
intoxicated from marijuana. Blake clearly testified at his deposition that he had smoked

marijuana before the dance, see Blake Dep. at 68, and the toxicology report from the hospital where his injuries were treated confirmed this. See Mot., Exh. T (Toxicology Report for Keon Blake). Blake described the marijuana he smoked as making him "feel weird," like he was in a "foggy tunnel," and making him do things he "normally wouldn't do," like urinating in another student's locker. See Blake Dep. at 70:8-70:14, 105:2-105:7, 105:14-106:4. His friend, Kevohn McCormick, testified that Blake's demeanor and behavior were "similar, but more extreme," relative to the behavior of other marijuana users he had observed. See Mot., Exh. F (Deposition of Kevohn McCormick) at 62.

Blake's observation that school administrators were "reluctant to associate Keon's behavior with drug use," see Opp. at 15, does little to counter this evidence. Rather, the statements Blake identifies from Gendre's deposition demonstrate, at most, that a school administrator who acknowledged his lack of medical training expressed his honest doubts about his ability to identify the source of a student's apparent impairment; they do not suggest in any way that the student was not impaired or that the source of his impairment was not drug related. See Gendre Dep. at 40 ("Q: Did you suspect that he had taken some drugs or had alcohol based on his behavior? A: I don't know that."), 31 ("Q: Did you tell Mrs. Blake or Keon's brother that you believed Mr. Blake was impaired on some kind of drugs or alcohol that night? A: I don't remember. No. I'm not a doctor."). Blake himself admitted to smoking marijuana, and his testimony and that of everyone else he encountered on the night of the incident indicates that he was significantly impaired. While Plaintiff suggests that some unknown and unidentified "temporary psychosis" may have accounted for his actions, see Opp. at 17, 19, no record evidence whatsoever supports such a conclusion. Considering the evidence here, and "considering every legitimate inference, only one conclusion may be drawn," Jones, 443 A.2d at

9

50: Blake's impairment on the night of the accident was caused by being intoxicated – unlawfully – from marijuana.

### 2. *Reckless Conduct*

Yet the Court need not determine whether such intoxication alone constitutes contributory negligence. Even if it does not, the uncontroverted evidence regarding Blake's actions immediately before he fell or jumped from the balcony clearly suffices. After being instructed to remain where he was, Blake ignored these directions and instead took off running away from two school administrators, apparently headed towards the school atrium. See McCormick Dep. at 106:3-106:5. As he ran to the atrium balcony, he – by his own admission – ducked under a series of protective cables blocking off the area, and then went over a guard railing and fell four stories to the atrium floor below. See Blake Dep. at 118:1-119:15. As a student at the school, he claimed that he knew the balcony well, and that prior to the incident, he generally avoided it because of his fear of heights. See id. at 109:15-110:11. All of this evidence is unrebutted; indeed, Plaintiff suggests neither a different sequence of events nor any other characterization of his conduct.

On these facts, it is difficult for the Court to imagine conduct further from that of a reasonable person trying to protect himself from harm: Blake, while knowingly impaired, placed himself in a position of obvious and imminent danger, intentionally overcoming obstacles to do so. This is precisely the kind of "rare and exceptional case[], with evidence so clear and unambiguous that the court must find contributory negligence as matter of law." Krombein v. Gali Service Industries, Inc., 317 F. Supp. 2d 14, 18 (D.D.C. 2004) (plaintiff who slipped and fell while knowingly walking on marked, wet surface was contributorily negligent as matter of law); see also Phillips v. D.C. Transit System, Inc., 198 A.2d 740, 741-42 (D.C. 1964) (plaintiff

who drove into intersection without looking was contributorily negligent as matter of law when her car was hit by oncoming bus); Phillips v. Fujitech America, Inc., 3 A.3d 324, 329 (D.C. 2010) (plaintiff who voluntarily attempted to climb out of stuck elevator was contributorily negligent when she fell down open elevator shaft); District of Columbia v. Brown, 589 A.2d 384, 388 (D.C. 1991) (plaintiff was contributorily negligent as matter of law where he lunged his 320-pound body at elevator door with obvious gap at one side, after having been warned against such conduct).

The facts of this case are similar to those found in two other decisions where courts applying District of Columbia law have viewed dangerous actions taken while intoxicated as approaching contributory negligence *per se*. In Andrews v. Wilkins, No. 88-1326, 1990 WL 102777 (D.D.C. 1990), Gino Andrews drowned after jumping into the Potomac River while fleeing from a United States Park Police Officer. At the time of his death, he had a blood alcohol level of 0.03% and tested positive for PCP and marijuana. Id. at *2, 5. The court held that there was "no evidence of reasonableness" in Andrews's conduct, describing it as "the kind of particularly extreme case where [a finding of contributory negligence *per se*] could be appropriate." Id. at *6. Likewise, in Marshall, the intoxicated plaintiff attempted to climb onto a carnival float and was injured when the driver pulled the towing pickup truck forward, dragging him underneath it. See 2004 WL 3257066, at *2-3. Marshall had a blood alcohol level of 0.10% and tested positive for amphetamines, propoxyphene (the active ingredient in Darvocet), and marijuana. Id. The court there held that Marshall's dangerous attempt to climb onto the parade float while severely intoxicated violated D.C. Code § 25-1001(d) and thus constituted contributory negligence *per se*. Id. at *9. The Court went on to note that "[e]ven if [it] were to find that [Marshall's conduct] was not negligence *per se*, the vast weight of the evidence

11

demonstrate[d] that Mr. Marshall failed to exercise reasonable care to ensure his own safety." Id. Like those unsuccessful plaintiffs, Blake engaged in a dangerous activity – climbing under a safety barrier to reach a balcony that he knew was perilous – while knowingly impaired after smoking marijuana. And like them, Blake cannot avoid a finding of contributory negligence as a matter of law for conduct falling so vastly below the standard of a reasonable and prudent person.

      B. Plaintiff's Remaining Arguments

Blake argues that regardless of the strength of the evidence, the defense of contributory negligence is not available on these facts for two reasons. First, he suggests that the defense does not apply because he was protected by a "safety statute" whose purpose would be defeated were contributory negligence found here. Second, he contends that because he was a child at the time of the accident, he should be held to a lesser standard of care, one that would obviate a finding of contributory negligence as a matter of law. Neither argument is availing.

      *1. Safety Statute*

Under D.C. law, "[w]here a particular statutory or regulatory standard is enacted to protect persons in a plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of the standard renders the defendant negligent as a matter of law," Perkinson v. Gilbert/Robinson, Inc., 821 F.2d 686, 691-92 (D.C. Cir. 1987) (internal citation, quotation marks, and emphasis omitted); in such a circumstance, moreover, "the defense of contributory negligence may not defeat the purpose of a statute or regulation." Id. at 692; see also Martin v. George Hyman Constr. Co., 395 A.2d 63 (D.C. 1978). Blake here relies on the School Safety and Security Contracting Procedures Act

(SSSCPA), D.C. Code §§ 5-132.01 – 5-132.06, which he suggests was designed to protect students from, among other things, accidents on school property. See Opp. at 13-14.

For a statutory duty to render the defense of contributory negligence unavailable, Plaintiff must (1) identify a particular law or regulation designed to promote safety, (2) show that the plaintiff is a member of the class to be protected by the statute, and (3) show that the statute imposes specific duties of care and protection on the defendant. See Jarrett v. Woodward Bros., Inc., 751 A.2d 972, 980 (D.C. 2000) (citation omitted) (holding that contributory negligence and assumption of risk do not apply where defendant violated the Alcoholic Beverage Control Act by serving an intoxicated, underage patron); see also District of Columbia v. Peters, 527 A.2d 1269, 1274) (D.C. 1987) (prohibiting defenses of contributory negligence and assumption of risk where defendant violated Metropolitan Police Department regulations regarding excessive force). The "safety statute" exception is a narrow one, however, and the case at hand is easily distinguishable from the canonical examples Blake cites. Blake's argument fails because he cannot satisfy the third requirement of the exception – namely, to show that the statute imposed any duty on Securitas. See Jarrett, 751 A.2d at 980.

The subchapter of the D.C. Code that Plaintiff cites, which is entitled "Contracting Procedures for Public School Security," imposes requirements on the Metropolitan Police Department, the Mayor, and the school system, but does not impose any specific duty on private security personnel. See, e.g., § 5-132.02 (requiring new "School Safety Division" of MPD to hire, deploy, and provide oversight for school security personnel); § 5-132.03 (requiring MPD to develop training curricula for school safety personnel). Because Blake cannot meet the "duty" requirement of the "safety statute" doctrine, he cannot claim that the SSSCPA prevents the application of contributory negligence to bar his recovery in this case.

## 2. Child Standard of Care

Finally, Blake argues that because "[he] was only seventeen at the time of the incident . . . . his conduct must be compared not to adults . . . but to other seventeen year[] old[s] with similar education, knowledge, and experience." See Opp. at 16. Blake's proposed understanding of reasonable conduct for a seventeen-year-old, however, is so alarming that it warrants quoting in its entirety:

> Teenagers often experiment with drugs. It is part of the growing process. Schools anticipate that students may use drugs prior to attending school activities, which is the reason staff is trained in handling students who are under the influence. A jury could reasonably conclude that a seventeen year old is not acting unreasonably by trying drugs, particularly marijuana, which is not known for having the extreme side effects of other drugs such as ecstasy or heroin.
> Further, Keon's knowledge and past experience with marijuana, which must be taken into account because of his age, makes his conduct more reasonable. Keon testified that he has taken marijuana in the past, but not on more than ten occasions and closer to five times. . . . Keon expected the marijuana to feel the same effect as his previous experiences. A reasonable jury could conclude that a seventeen year old with Keon's past, innocuous experience with marijuana was not acting unreasonably by smoking marijuana prior to a high school dance.

See Opp. at 17 (citations omitted).

The Court trusts it need not devote much space to explaining why this is not and cannot be the law in the District of Columbia. Not only is Blake's argument inaccurate as to whether a "child's" standard of care applies to someone as close to legal adulthood as he was at the time of the accident, but it is tantamount to suggesting that a "reasonable teenager" should be assumed incapable of prudence, at least as to the matter of abstaining from illegal drugs.

D.C. Standard Jury Instruction § 5.08, which Blake cites for the proposition that children should be judged based on "the degree of care which is ordinarily exercised by children of

similar age, education, knowledge and experience under the circumstances," is based on Restatement (2d) of Torts § 283A (1965). The Restatement describes a "child" as "a person of such immature years as to be incapable of exercising the judgment, intelligence, knowledge, experience, and prudence demanded by the standard of the reasonable man applicable to adults." Id., § 283A, cmts. a, b. Blake has identified no D.C. case – nor has the Court found any – that applied this instruction to someone as old as he was at the time of the accident – just four months shy of his eighteenth birthday. The comments to the Restatement, furthermore, suggest that the District is not an anomaly in this regard and that the "child" standard of care "has seldom been applied to anyone over the age of sixteen." Id. Indeed, cases from other jurisdictions provide examples of teenagers, particularly when they engage in dangerous behavior, being held to the adult standard of care. See, e.g., Dorias v. Paquin, 304 A.2d 369, 372 (N.H. 1973) (applying adult standard of care where seventeen-year-old plaintiff walked on wrong side of road at night with no light and while wearing dark clothing because "[o]nce a youth's intelligence, experience and judgment mature to the point where his capacity to perceive, appreciate and avoid situations involving an unreasonable risk of harm to himself or others approximates the capacity of an adult, the youth will be held to the adult standard of care"); Reed v. National Council of the Boy Scouts of America, Inc., 706 F. Supp. 2d 180, 188 (D.N.H. 2010) (holding eleven-year-old plaintiff contributorily negligent where he sledded over a jump while standing because "[t]here [was] no question that the danger of [doing so] would have been apparent to a reasonable person of [the plaintiff's] age, intelligence, and experience, particularly in light of the circumstances"). Under these circumstances, with Blake so close to the age of majority, the Court cannot find that he should be held to a lesser standard of care than an "adult" a mere four months older than he was at the time of the accident.

Even if the Court were to so find, it cannot imagine that that standard would be the one Plaintiff argues for here. Blake's "everybody's doing it" argument that the conduct of a reasonable and prudent seventeen-year-old would include the use of illegal drugs, however experimental, strains the bounds of credulity to their breaking point. Possession of marijuana for personal use is, and has long been, illegal. See D.C. Code § 48-904.01(d)(1). The Court is neither prepared nor empowered to define a standard of reasonable behavior for a teenager on the brink of adulthood that defies the law.

Of course, even if the Court were to adopt such an approach, it would not save Blake's claim on the facts here: as previously explained, Blake's contributory negligence lies not merely in his marijuana intoxication, but in running away from a school administrator, slipping under a protective barrier, climbing over a railing, and proceeding onto a dangerous balcony that he admitted he typically avoids out of fear of the obvious hazard it presents, and in having done so while knowing himself to be significantly impaired. See Section III.A.2, *supra*. None of these actions could possibly be reasonable even for a seventeen-year-old.

Because Blake's conduct was contributorily negligent as a matter of law, if not contributorily negligent *per se*, he is completely barred from recovering from Securitas for the injuries he incurred on the night of the accident.

### IV. Conclusion

For the foregoing reasons, the Court will grant Securitas's Motion for Summary Judgment. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 26, 2013